LOPETRONE v. ROMA CATERING COMPANY, INC.

DAMAGES—CONTRACTS—DETERMINATION—AMOUNTS—EVIDENCE.
    Damages having been found to exist where an employment
    contract was breached, the trial court sitting without a jury
    must make a determination of the amount of damages, even
    where the evidence of amount is vague and unsatisfactory be-
    cause the defendant employer has destroyed daily work records
    for the period in dispute.

Appeal from Common Pleas Court of Detroit, John D. O'Hair, J. Submitted Division 1 May 6, 1969, at Detroit. (Docket No. 4,446.) Decided May 27, 1969. (17 Mich App 386.) Rehearing granted August 4, 1969. Decided November 26, 1969.

Complaint by John Lopetrone against Roma Catering Company, Inc., a Michigan corporation, for back wages owed under a collective bargaining contract. Judgment for plaintiff, but in a smaller amount than was claimed. Plaintiff appeals. Remanded for further hearing.

*Schouman & Stackpoole,* for plaintiff.

*Metry, Metry, Sanom, Ashare & Goldman,* for defendant.

Before: HOLBROOK, P. J., and McGREGOR and BRONSON, JJ.

REFERENCE FOR POINTS IN HEADNOTE
22 Am Jur 2d, Damages § 25.

ON REHEARING.

PER CURIAM.  Plaintiff, John Lopetrone, sued defendant, Roma Catering Company, Inc., for money allegedly owed plaintiff under the terms of a collective bargaining contract.  The trial judge concluded that although defendant had violated the terms of the collective bargaining contract by paying plaintiff at the rate of $2 per hour, plaintiff failed to present a fairly reliable standard of determining damages.  However, plaintiff did substantiate his hours from March 2, 1965, through and including October 30, 1965.

The trial court, sitting without a jury, held that plaintiff was entitled to recover $488 plus costs of $23.  From this decision plaintiff appeals seeking recovery for the years 1960 to March, 1965.

On reconsideration, we feel constrained to reverse our decision in *Lopetrone v. Roma Catering Company, Inc.* (1969), 17 Mich App 386.  As we noted in that previous decision, an examination of the record and the lower court's opinion shows that there is some confusion as to which contract was in force in 1960, and whether plaintiff was paid at the rate of $2 per hour at all times.

One source of confusion in this case is that the trial judge was interpreting a contract which provided that bartenders were to be paid $17.50 for an eight-hour day, provided that the bartender worked a minimum of two hours.  Clearly, unless plaintiff could establish with some particularity that he worked at least two hours on a given day, the contract does not indicate that the payment of $2 per hour is improper.  However, the contract before this Court, which was effective June 1, 1963, makes no requirement of working two hours.  The contract

simply states that a bartender is entitled to $17.50 for working eight hours or less.

Plaintiff argues in this appeal that the reason he was prevented from proving the hours he worked was because of the failure of the defendant to keep proper records. The collective bargaining contract signed by plaintiff's union and defendant, effective June 1, 1963, provides as follows:

"(35) The employer shall, at each regular pay period, give to each employee a statement of all social security tax, withholding tax, deductions from pay, etc. It shall be the duty of the employer to make and preserve a complete record showing wages paid and hours worked by all employees covered by this agreement as well as a complete record of all insurance contributions made in accordance with paragraphs (14) and (15). The employer shall upon request, make such records available for inspection by any authorized representative of the union."

Defendant argues that proper records were kept and that the records kept by defendant reflect the hours an employee works in a week, although the company does not retain the daily records for more than one year. No record of the weekly hours worked was submitted in evidence by plaintiff and there was no argument to this effect at the trial. However, it also appears in the transcript that from February of 1963 through July of 1964, plaintiff was paid at a rate of $2.25 per hour.

The trial judge found in part that:

"There is no doubt in the court's mind but from the period 1960 to October 30, 1965, the defendant did not pay the compensation contractually obligated by it to pay to the bartenders. There is no doubt about this at all. * * *

"The real problem confronting the court pertains to damages proven by the plaintiff by the preponder-

ance of the evidence; the court has no difficulty in concluding that there was a breach of the employment agreement by the defendant even though the plaintiff, the bartender, accepted compensation less than that provided for by the agreement after having full knowledge of the existence of the provision of the agreement.

\* \* \*

"We come to the question of damages; the defendant's breach was continuous from 1960 to October of 1965, the proof offered by the plaintiff in support of his claim of damages as to the period March 2, 1965, to October 30, 1965, are speculative. During this period of time the plaintiff maintained daily records as to the number of hours worked per day as well as the number of days worked during that period of time. Based upon his calculation of what he did in fact receive as compensation from the defendant during the aforementioned period of time and what he would have received had the contract been adhered to, he was damaged in the sum of $488.

"When he goes to the period prior to March 2, 1965, in going back to 1960, the only evidence that we have or that the court has received is the W-2 forms of the plaintiff for the years 1960 through 1965. The W-2 forms for each year reflect the gross wages paid by the defendant to the plaintiff. From the amount of gross wages paid for the years '60 through '65 the defendant has presented a number of theories whereby it could be determined what damages the plaintiff sustained. For the period upon which or during which he maintained specific records, it is the court's belief that these theories, though interesting in the sense that they represent ingenuity on the part of plaintiff's counsel to overcome a dearth of proof, but insofar as affording a reasonable rational fairly reliable standard or means of determining damages, I believe the theories failed."

The trial judge then concluded that:

"In order to determine not necessarily precisely or absolutely, the damages sustained by the defendant's breach during the period '60 to '65 excluding the one period it would be necessary for the court to determine approximately the number of days worked during that period and the number of hours worked per day. The plaintiff has testified that some days he worked eight hours; some days he worked less; some days he worked more; this testimony tells the court nothing insofar as proving any rational basis for determining damages resulting from the defendant's breach. There must be some proof as to the number of hours per day and in this area it is completely lacking."

While noting the inherently difficult task faced by the trial judge we must remand for further hearing. In the present case the court is not asked to speculate as to damages. The trial judge, in fact, found that plaintiff had been damaged. What plaintiff seeks is a judicial determination of the amount of those damages. The lower court found that for the period before March 2, 1965,

"[T]he only evidence that we have or that the court has received is the W-2 forms of the plaintiff for the years 1960 through 1965. The W-2 forms for each year reflect the gross wages paid by the defendant to the plaintiff."

The trial judge felt that plaintiff, because he could only present unsupported "theories" could not recover damages for this period. The effect of this is to reward defendant for the destruction of his daily work records in spite of the fact that the court had found that plaintiff had been damaged.

Courts are often called upon to speculate about amounts, be they in formation of contracts or in damages. Having found damages to exist it is in-

cumbent upon the trial court to make a determination as to the amount involved.

On the basis of the record before us, we conclude that this Court lacks sufficient data to determine whether plaintiff's theories of recovery are justifiable. We remand this case for a hearing solely on the issue of plaintiff's damages.

Remanded for further hearing consistent with this opinion.